**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MARK EDWARDS,

                                        Plaintiff,

              - v -                                    Civ. No. 9:08-CV-256
                                                              (LEK/RFT)

SGT. BEZIO, C.O. LaPAGE, C.O. LaFEY,
C.O. CARRONS, C.O. REIF,
*all individually and in their official capacities*,

                                        Defendants.

**APPEARANCES:**                           **OF COUNSEL:**

MARK EDWARDS
Plaintiff, *pro se*
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

HON. ANDREW M. CUOMO                        MICHAEL G. McCARTIN, ESQ.
Attorney General for the State of New York  Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

        *Pro se* Plaintiff Mark Edwards filed this civil rights action, pursuant to 42 U.S.C. § 1983,

alleging several violations of his constitutional rights, including retaliation, excessive force,

deliberate indifference, and failure to protect.  Dkt. No. 1, Compl.  Defendants Sergeant (Sgt.) Bezio

and Corrections Officer (C.O.) LaPage[1] now move for Summary Judgment pursuant to FED. R. CIV.

---

[1] Defendants C.O.'s Carrons and Reif have not joined this Summary Judgment Motion.  Also, Defendant C.O. LaFey has not yet been served with process.  *See* Dkt. No. 10.

P. 56(c).  Dkt. No. 36.  Plaintiff opposes the Motion.  Dkt. No. 39.  For the reasons that follow, it is recommended that the Motion be **GRANTED**.

## I. BACKGROUND

In order provide a background for assessing Defendants' Motion, we summarize the allegations raised in the Complaint as follows:[2]  On December 28, 2005, Plaintiff, upon his arrival at Upstate Correctional Facility ("Upstate") after being transferred from another prison, was assigned to cell 19 and was not allowed to retrieve any of his personal property until January 2, 2006.  Compl. at ¶ 13.  On that date, while Plaintiff was retrieving his property, Defendant C.O. LaFey noticed his legal papers and told Plaintiff, "[w]e don't like writers [at Upstate]."  *Id.*  Then, C.O. LaPage, who was also present, said "if he complains up here, we'll teach 'em [sic]."  At some point, either or perhaps both LaPage and LaFey warned Plaintiff, "if you write us up, we'll teach you a hard lesson."  *Id.* at ¶ 27.  While still at the property area, LaFey asked Plaintiff if he had any stamps and, after Plaintiff indicated that his stamps were in his Bible, LaFey pocketed them.  *Id.* at ¶ 13.  After Plaintiff asked for his stamps back, LaPage became angry and threatened to throw Plaintiff down the stairs.  *Id.*  Without his stamps, Plaintiff was unable to send his correspondences.[3]  *Id.*

Plaintiff also claims that after he refused to double bunk with another inmate, Defendants LaPage and Bezio threatened him, stating, "we're going to teach you a lesson."  *Id.* at ¶ 28.  Finally, Plaintiff alleges that "LaPage, LaFey, and Bezio colluded to retaliate against the Plaintiff for filing

---

[2] We omit Plaintiff's claims against C.O.'s Carrons and Reif, the non-moving Defendants.  *See* Compl. at ¶ 15. We also omit Plaintiff's claims against C.O. Bogardrus, who is not a named defendant in this action.  *See* Compl. at ¶ 14.  For a complete statement of Plaintiff's allegations, reference is made to the Complaint.

[3] Plaintiff does not specifically identify to whom he intended to send correspondences.

a claim against people they knew personally, or related to as prison guards." *Id.* at ¶ 30.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "'pleadings, depositions, answers to interrogatories, and admissions on file, together with [] affidavits, if any,'" that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set out specific facts showing [that there is ]a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a

summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

**B. Retaliation**

Plaintiff alleges that Defendants LaFey, LaPage, and Bezio retaliated against him because of "past and present complaints" he filed, including both grievances and civil rights actions. Compl. at ¶ 31.

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be

characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove that (1) he engaged in constitutionally protected conduct; (2) prison officials took an adverse action against him; and (3) a causal connection exists between the protected speech and the adverse action. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

Here, Plaintiff alleges that Defendants LaFey, LaPage, and Bezio took adverse actions against him when they allegedly threatened him.[4] First, Plaintiff alleges LaFey and LaPage told him that "if you write us up, we'll teach you a hard lesson." Compl. at ¶ 27. Second, Plaintiff alleges that LaPage and Bezio told him they were "going to teach [him] a lesson" after Plaintiff refused to double bunk with another inmate. *Id.* at ¶ 28.

The above threats were allegedly motivated by grievances and lawsuits Plaintiff filed. *Id.* at ¶ 30. Although Plaintiff alleges that he was retaliated against for "past and present" grievances and lawsuits, he does not specifically identify any grievance or lawsuit he filed that became the motivation for the alleged threats. While the filing of grievances and lawsuits is constitutionally

---

[4] In his deposition, Plaintiff also speculated that Defendant LaPage arranged for another inmate to assault Plaintiff as retaliation. Dkt. No. 36-3, Pl.'s Dep. Tr., dated Feb. 10, 2009, at p. 45. However, Plaintiff makes no such allegation in his Complaint. In fact, Plaintiff asserts that C.O. Bogardrus (not a named defendant in this action), not LaPage, set him up by placing a dangerous inmate in his cell. Compl. at ¶ 14. A plaintiff may not amend his complaint by making new allegations in his deposition, or in response to a motion for summary judgment. *See Aretakis v. Durivage*, 2009 WL 249781, at *26 (N.D.N.Y. Feb. 3, 2009) (citing cases for the proposition that "opposition papers are not the proper vehicle to instill new causes of action"). Therefore, we do not consider that accusation in our discussion.

protected activity, *see Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), Plaintiff's general references to grievances and lawsuits he allegedly filed are not sufficient to establish that he was engaged in protected conduct, *see Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."); *see also Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 468 (S.D.N.Y. 1998) (citing *Flaherty* for the proposition that "[b]road and unsubstantiated allegations of retaliation . . . will not defeat a motion for summary judgment").

Indeed, by Plaintiff's own admission, one of LaPage's and/or Bezio's alleged threats was prompted by his refusal to bunk with another inmate, not by his engagement in constitutionally protected conduct. Moreover, Plaintiff admitted in his deposition that most inmates in Upstate are housed in double cells. Dkt. No. 36-3, Pl.'s Dep. Tr., dated Feb. 10, 2009, at p. 49; *see also* Dkt. No. 36-4, Donald LaPage, Aff., dated June 15, 2009, at ¶¶ 7-8 (stating that "placing an inmate in double-cell status is the norm"). Thus, that claim must fail because Plaintiff has failed to show a causal connection between his protected conduct and the alleged threats made.

For the above reasons, we recommend that Plaintiff's retaliation claims against LaPage and Bezio be **dismissed**.

## C. Threats

Plaintiff alleges Defendants LaPage and Bezio violated his Eighth Amendment rights when they threatened him. In addition to the threats mentioned in Part II.B, *supra*, Plaintiff alleges that LaPage threatened to throw him down the stairs after he challenged Defendant LaFey's theft of his

stamps on January 2, 2006.[5]  Compl. at ¶ 13.

It is well settled law in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing *Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996)); *Petway v. City of New York*, 2005 WL 2137805, at *3 (E.D.N.Y. Sept. 2, 2005); *Larocco v. New York City Dep't of Corr.*, 2001 WL 1029044, at *5 (S.D.N.Y. Aug. 31, 2001).  Thus, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Moncrieffe v. Witbeck*, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (quoting *Aziz Zarif Shabazz v. Pico,* 994 F. Supp. 460, 474 (S.D.N.Y. 1998)).  Additionally, "threats do not amount to violations of constitutional rights." *Id.* (quoting *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)).

For the above reasons, it is recommended that Plaintiff's Eighth Amendment claims based on the Defendants' alleged threats be **dismissed**.

## D.  Failure to Serve

Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period.  Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint.  FED. R. CIV. P.

---

[5] Plaintiff makes clear in his Complaint that LaPage made this threat "because he was angered that the Plaintiff asked for his stamps," not because of any constitutionally protected conduct he was engaged in.  Thus, Plaintiff has not asserted a retaliation claim with respect to this alleged threat.

4(m).[6]  Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant.  *Id.*

In this case, there is no indication that the Defendant C.O. LaFey has been properly served.  *See* Dkt. No. 10, Unexecuted Summons.  Although the courts must afford plaintiffs notice before they may dismiss a claim for failure to serve a defendant, FED. R. CIV. P. 4(m), in this case, because Plaintiff's claims lack merit, granting Plaintiff the opportunity to properly serve LaFey would be futile.

Plaintiff's claims that on January 2, 2006, LaFey, upon noticing Plaintiff's legal papers, stated "we don't like writers up here [in Upstate]," and "if you write us up, we'll teach you a hard lesson."  Compl. at ¶¶ 13 & 27.  As mentioned above in Part II.C, receipt of such a threat (to the extent it can be classified as such) is not a valid basis for a § 1983 claim.  To the extent Plaintiff alleges that LaFey's threat was retaliatory in nature, that claim should be dismissed for the same reasons as his claims against LaPage and Bezio, namely, Plaintiff has failed to establish he was engaged in constitutionally protected conduct.

Plaintiff also accuses LaFey of stealing stamps from his Bible in retaliation and in order to prevent Plaintiff from sending letters and otherwise corresponding.[7]  Compl. at ¶¶ 13 & 29. LaFey's alleged theft of Plaintiff's stamps, even assuming the truth of such accusation, does not rise to the

---

[6] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

[7] In contradiction to the allegations raised in his Complaint, Plaintiff stated in his deposition that Defendant LaPage stole his stamps, not LaFey.  Pl.'s Dep. at pp. 28-29.  However, Plaintiff makes clear in his Response to Defendants' Motion that the deposition transcript is incorrect and he intended to bring this claim against LaFey, not LaPage.  Dkt. No. 39, Pl.'s Resp. at pp. 4 & 7.

level of a due process violation.  The lynchpin of a due process claim based on a state actor's unauthorized deprivation of private property is the availability of post-deprivation remedies provided by the state, not the deprivation itself.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that the destruction of a prisoner's property did not violate due process when the state provided a meaningful post-deprivation remedy) (cited in *Howard v. Leonardo*, 845 F. Supp. 943, 947 (N.D.N.Y. 1994) (denying prisoner's § 1983 claim that his property was stolen or lost because he failed to allege that he was denied an adequate post-deprivation remedy)).  Plaintiff does not allege that New York State has failed to provide a meaningful post-deprivation remedy and, in fact, New York provides a venue for challenging such appropriations in the New York Court of Claims. N.Y. CT. CL. ACT § 9 (McKinney's 1989) (cited in *Reyes v. Koehler*, 815 F. Supp. 109, 114-15 (S.D.N.Y. 1993)).  Thus, Plaintiff's due process claim against LaFey is without merit.

Finally, Plaintiff's claim that LaFey stole his stamps in retaliation fails because, like his other retaliation claims, it is alleged in wholly conclusory terms.  Plaintiff does not identify the protected conduct that was the motivation for the alleged theft, nor does he attempt to link LaFey to such conduct in order to create a causal connection.

Therefore, it is recommended that Plaintiff's claims against LaFey be **dismissed** as futile pursuant to 28 U.S.C. § 1915.  *See, e.g.*, *Zimmerman v. Burge*, 2008 WL 850677, at *7 (N.D.N.Y. Mar. 28, 2008) (noting that "even where a defendant has not requested dismissal based on the failure of the plaintiff to state a claim upon which relief may be granted, a district court may, *sua sponte*, address whether a *pro se* prisoner has failed to state a claim[.]") (citing 28 U.S.C. § 1915(e)(2)(B)(ii)).

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Partial Summary Judgment (Dkt. No. 36) be **GRANTED** and Plaintiff's claims against LaPage and Bezio be **DISMISSED**; and it is further

**RECOMMENDED**, that the Plaintiff's claims against C.O. LaFey be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);[8] and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).


Date:   February 5, 2010
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

---

[8] In the interest of clarity, we note that should the District Court adopt this Report-Recommendation, only Plaintiff's claims against Defendants Carrons and Reif shall remain. *See* Compl. at ¶¶ 15 & 21-25.